UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:20-CV-80651-DMM

TERRY V. WOODS,

        Plaintiff,

vs

STEVEN MICHAEL; ANDREW GREENBAUM a/k/a AVI GREENBAUM;
HH ORLANDO KISSIMMEE, LP, a Florida limited partnership;
HUDSON ORLANDO REAL ESTATE MANAGER, LLC, a Florida limited liability company;
HH KISSIMMEE, LP, a Florida limited partnership;
HUDSON REAL ESTATE MANAGER, LLC, a Florida limited liability company;
HUDSON ORLANDO KISSIMMEE, LLC, a Florida limited liability company;
HUDSON REAL ESTATE ACQUISITION GROUP, LLC, a Florida limited liability company;
HUDSON HOLDINGS, LLC, a Florida limited liability company;
HH ST. LOUIS RAILWAY, LP, a Missouri limited partnership;
HUDSON ST. LOUIS REAL ESTATE MANAGER, LLC, a Missouri limited liability company;
HH RAILWAY, LP, Delaware limited partnership;
HUDSON ST. LOUIS RAILWAY, LLC, a Florida limited liability company;
RAILWAY INVESTORS, LLC, a Missouri limited liability company;
HUDSON REAL ESTATE HOLDINGS, LLC, a Florida limited liability company; and
HP ANDRE WAY, LLC, a Florida limited liability company,

        Defendants.

_____/

## DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON MOTION FOR APPROVAL OF ATTORNEY'S FEES AND COSTS

COMES NOW DEFENDANTS, by and through undersigned counsel, and pursuant to Fed

R. Civ. P. 72(a) and Local Magistrate Rule 4(a), hereby submits the following Objections to the

Magistrate Judge's Order on Motion for Approval of Attorney's Fees and Costs dated December

16, 2020 [DE 99], respectfully requesting that the Court set aside the Order to the extent that it

permits the full amount of fees and costs awarded to Plaintiff.  In support thereof, Defendants state

as follows:

1

## PROCEDURAL BACKGROUND

Plaintiff has sued Defendants - 2 individuals and 14 corporate entities – alleging that Defendants fraudulently induced him to invest approximately $7 million in various real estate developments in Florida, Ohio, Kentucky and Missouri.  Plaintiff has further alleged that Defendants committed civil RICO violations and securities violations in furtherance of their scheme to defraud Plaintiff of his money.  Plaintiff has thus far filed three Complaints, the Second Amended Complaint [DE 83] being the most recent.  In response, Defendants have filed a Motion to Dismiss [DE 88], which is currently pending before this Court.  Defendants have yet to file an answer or any defenses in this matter.

As part of his case, Plaintiff served upon Defendants a massive request for production of documents, covering all financial and business records of all named Defendants for a period of 6 years.  After Defendants objected to the breadth and scope of the discovery requests, the Magistrate held a hearing on July 16, 2020, in which he ordered that all discovery (literally tens of thousands of pages of documents) be produced by August 17, 2020. [DE 40].

On August 13, 2020, this Court dismissed Plaintiff's original Complaint [DE 47]. Accordingly, on August 17, 2020, the date that all discovery was to be due by Defendants, Defendants filed a Motion to Stay Discovery, arguing that the sheer breadth of the discovery requests was considerably burdensome, especially considering that Plaintiff had failed to plead one or more causes of action that properly invoked the jurisdiction of the Court.  [DE 52].  This Court denied the requested relief on August 26, 2020.  [DE 59].

Thereafter, Plaintiff moved the Magistrate Judge for an order of sanctions against Defendants for failure to complete all discovery by the August 17, 2020 deadline.  By Order dated September 4, 2020, the Magistrate Judge ordered that Defendants pay Plaintiff an award of his

attorney's fees and costs in bringing the motion [DE 63].  The Magistrate Judge further ordered that all discovery would be produced by September 17, 2020.

Thereafter, Defendants expended countless hours amassing the voluminous records that were sought by Plaintiff.  It is worth noting that the team for Defendants to assemble such mass amounts of documents were essentially the two individual Defendants, their bookkeeper, and undersigned counsel.  Nevertheless, Defendants worked tirelessly to propound all documents requested but were physically unable to locate and produce all such documents during the time requested.  Plaintiff then filed a motion asking the Court to hold the individual Defendants in civil contempt for failure to strictly adhere to the discovery orders by the Magistrate.  [DE 76].  This motion was supplemented a number of times [DE 77, 78, 85, 86].  The crux of the motion for civil contempt is that certain documents had been identified by Plaintiff's expert witnesses as being missing from the production, including documents that were listed on a spreadsheet prepared by Plaintiff's experts, and which largely consisted of missing financial information.  Each time Plaintiff's counsel made Defendants aware of missing documents, Defendants strove to supplement their responses to submit the requested documentation.  Further, Defendants set forth a Response [DE 90], in which they argued that the status of discovery had been grossly misconstrued by Plaintiff, and that Defendants had produced tens of thousands of pages of documents in a relatively short time period and with an extremely limited staff.  Defendants set forth numerous good-faith arguments as to their efforts to comply with the Magistrate Judge's discovery orders, and as to their inability to produce certain documents.

A hearing was held before the Magistrate Judge on November 24, 2020.  The Magistrate Judge subsequently issued an Order [DE 92] in which he found Defendants arguments unavailing, and ordered that the few remaining documents that had not yet been produced for various reasons

3

to be produced, and awarding Plaintiff "reasonable fees and costs in bringing its Motion and the fee for its expert accountant."

Plaintiff submitted his Motion for Approval of Fees and Costs, [DE 95] in which he sought a jaw-dropping $23,918.00 in fees and costs. Of this amount, $13,375.00 was for attorney's fees, primarily for Attorney Craig Rubinstein, who set forth a bill rate of $625.00 per hour, and $10,324.00 for the expert fees, which included numerous items that did not appear to have any relation to the Motion for Contempt that was the subject of the Order upon which Defendants file this Objection. Defendants filed a Response to the Motion for Approval [DE 96], in which they argued that Plaintiff sought fees and costs for tasks and expenses unrelated to bringing the subject Motion, and because the hourly rates for both Plaintiff's attorney and his expert witnesses was unreasonable. By Order [DE 99] the Magistrate Judge found that the attorney bill rate for Mr. Rubinstein was "high, but reasonable", but reduced the amount of hours billed from 21.4 to 14.45 recoverable hours. In addition, the Magistrate Judge reduced the expert fees from $10,324.00 to $8,775.40 for a. total sanction of $18,025,.65, due within 30 days of the Magistrate Judge's Order. This Objection followed.

## STANDARD OF REVIEW

Under Rule 72(a) of the Federal Rules of Civil Procedure, the Court "shall modify or set aside any part of the order that is clearly erroneous or is contrary to Law." Fed. R. Civ. P. 72(a); Traylor v. Howard, 433 F. App'x 835, 836 (11th Cir. 2011). A finding is clearly erroneous if "the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed." Krys v. Lufthansa German Airlines, 119 F.3d 1515, 1523 (11th Cir. 1997).

**ARGUMENT**

**1. The Magistrate Judge's Order on Motion for Approval of Attorney's Fees and Costs dated December 16, 2020 is Clearly Erroneous and Contrary to Law.**

    **a) The Order is clearly erroneous because it awarded Plaintiff an excessive attorney hourly bill rate.**

At the outset, it is axiomatic that Plaintiff bears the burden of establishing that its attorneys' rates and hours billed are reasonable. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). The way in which courts in this Circuit make such a determination "is to multiply the number of hours reasonably expended by a reasonable hourly rate." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). The Court is an expert on the question of reasonableness, and it "may consider its own knowledge and experience concerning reasonable and proper fees." Norman, 836 F.2d at 1303. It is abundantly clear that Mr. Rubinstein's hourly rate is unreasonably high based on the going rate in the Southern District of Florida.

Mr. Rubinstein has set forth a rate of $625 per hour for his legal services. Mr. Rubinstein is listed on his firm's website (kwblaw.com) as a partner with approximately 24 years' legal experience. However, even with Mr. Rubinstein's unquestionable credentials, such a bill rate is wholly outside what is customary in the South Florida Market. See Hermosilla v. Coca-Cola Co., 10-21418-CIV, 2011 WL 9364952, at *12 (S.D. Fla. July 15, 2011), subsequently aff'd, 492 Fed. Appx. 73, 2012 WL 4856100 (11th Cir. 2012) (finding that partners in a large multinational law firm were entitled to a $425.00 per hour bill rate as opposed to the $500-$600 per hour rate sought, which the court found "extraordinary in the South Florida market); Flagstar Bank, FSB v. Hochstadt, 08-80795-CIV, 2010 WL 1226112, at *5 (S.D. Fla. Mar. 4, 2010) (Hopkins, Mag. J.) (determining in commercial litigation dispute that hourly rate of $425 was reasonable for partner who had practiced law for over 30 years); Procaps S.A. v. Patheon Inc., No. 12-24356-CIV, 2013

WL 6238647, at *14 (S.D. Fla. December 3, 2013) (reducing hourly rates charged by premium national law firm from $995 to $565, $945 to $515, and $785 to $425); MKT Reps S.A. De C.V. v. Standard Chartered Bank Int'l (Americas) Ltd., No. 10-22963-CIV, 2013 WL 1289261, at *9 (S.D. Fla. Mar. 28, 2013) (reducing hourly rates charged by large, Miami-based firm from $610 to $500 and from $475 to $350); Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc., 697 F. Supp. 2d 1349 (S.D. Fla. 2010) (reducing hourly rates charged by premium New York law firm by 19 to 25 percent).  It is clear from the foregoing that Mr. Rubinstein's hourly rate is excessive and must be reduced to a rate that is customary for similarly experienced lawyers in the South Florida market.[1]

**b) The Order is clearly erroneous because it awarded Plaintiff an excessive expert fee.**

The costs sought by Plaintiff for his accounting experts are unreasonable because the hourly rates charged by Plaintiff's experts are excessive.  Federal Rule of Civil Procedure 37(b)(2)(c) dictates that while a court can impose a party's expenses on another, those costs must be "reasonable".  Even after an initial reduction in the expert fee by the Magistrate Judge, Plaintiff's application for the costs of his expert accountants is wholly unreasonable.

Plaintiff's experts have included a great number of time entries that seemingly have little relation to Plaintiff's Motion for Order to Show Cause and the hourly rates Plaintiff's experts have charged are highly excessive.  A review of Exhibit 2 to Plaintiff's Motion for Approval of Fees and Costs indicates that Plaintiff's experts are charging in the range of 200.00 per hour up to 500.00 per hour for their services.  Just as in the case with Plaintiff's attorney's hourly rates, it is clear that Plaintiff's experts are charging an excessive fee for such services.

---

[1] By way of comparison, Defendant's attorney has 13 years' experience, is licensed to practice in Florida, New York and Connecticut, and charges his clients $350.00 per hour for the instant litigation.

A review of the timesheet provided by Plaintiff in Exhibit 2 to his Motion illustrates such glaring overcharges. For example, the first entry states that "Crain" expended 1.3 hours at a rate of $550.00 per hour for "Defendants' production of documents". Such a description is wholly inadequate to determine whether such activity was made in furtherance of Plaintiff bringing his Motion for Order to Show Cause. The next entry is even more egregious, in that "Lang" expended 2.10 hours at a rate of $475.00 per hour to have phone calls and review files. The hourly rates reflected by Plaintiff's experts are, by and large, wholly unreasonable in light of the services provided by such experts, as reflected on Exhibit 2. Nor do the vast majority of the descriptions contained in Exhibit 2 convey affirmatively that such activities were made in furtherance of Plaintiff bringing his initial Motion for Order to Show Cause. The Magistrate Judge's Order was clear, in that Plaintiff was entitled to his **reasonable** fees and costs in bringing its **<u>Motion</u>** (for Order to Show Cause), and for the fee for its expert accountant (presumably, for the expert's assistance in Plaintiff's Motion for Order to Show Cause). The documentation as submitted does not allow this Court to make any determination as to which, if any, entries were made in furtherance of Plaintiff's Motion and, most importantly, contain such outrageous bill rates as to be summarily rejected and reduced by this Court. An expert fee of almost $9,000.00 to assist the preparation of a rather straightforward Motion for an Order of Contempt is wholly unreasonable and, as such, is clearly erroneous.

c) **The Order is clearly erroneous because it awarded Plaintiff fees and costs for activities unrelated to bringing the Motion for Order to Show Cause.**

A review of Plaintiff's documentation provided in support of his application for fees and costs clearly demonstrates that Plaintiff seeks such fees and costs that predate the timeframe referenced in the Order entered by the Magistrate Judge and, as such, those fees and costs should be denied or reduced. This Court Order awarding sanctions specifically states that "Plaintiff is

7

entitled to reasonable fees and costs in bringing its Motion" and "the fee for its expert accountant". Defendant filed its first Motion on October 12, 2020, which consists of approximately six pages of arguments, the vast majority of which are a factual recitation of the procedural history of the discovery disputes. However, in Exhibit "A" to his Motion, Plaintiff's counsel has included several hours of work that predated even his own preparation of the Motion, presumably beginning on October 12, 2020. Further Plaintiff's counsel has included in his application for fees such perfunctory tasks as communicating with Defendants' counsel about missing documents, drafting of third-party subpoenas, preparing to attend hearings, and many other tasks not directly related to "bringing its Motion" as the Court ordered. Further, Plaintiff has attempted to include in his application fees for the preparation of the instant Motion – that is, Plaintiff seeks to be awarded fees and costs not only for the drafting of the original Motion for Order to Show Cause, but for the preparation of the documents to be awarded fees and costs. Although the Magistrate Judge did reduce the number of recoverable hours from 21.4 to 14.45, it is still wholly unreasonable to believe that Plaintiff's counsel expended 14.45 hours in preparing a Motion for Order to Show Cause.

The same argument applies to Plaintiff's application for the expert fees sought, which are attached as Exhibit "B" to Plaintiff's Motion. In that document, Plaintiff claims that its experts expended 42.85 hours and approximately $10,300.00 in fees in assisting with the preparation of Plaintiff's Motion for Order to Show Cause. However, even a casual review of the spreadsheet attached on the last page of Plaintiff's Motion for Approval of Fees shows highly extraneous and unreasonable time entries. For example, Plaintiff seeks a reimbursement of his expert's time in having phone calls, downloading documents that have been produced, having "team calls" and the like. In fact, the only time entry that even seems relevant to the preparation of Plaintiff's Motion

for Order to Show Cause occurred between 10/1/2020-10/5/2020, wherein the expert presumably created a "request list" that served as a basis for Plaintiff's Motion alleging that there were missing documents.  Just as was the case with Plaintiff's application for attorney's fees, so too does his application for expert costs contain irrelevant and unrelated time entries that do not directly expended in the preparation of Plaintiff's original Motion for Order to Show Cause and must be reduced further than the Magistrate Judge was willing to do.

## CONCLUSION

For the reasons set forth above, the Magistrate Judge's Order on Motion for Approval of Attorney's Fees and Costs dated December 16, 2020 is contrary to law and clearly erroneous, and as such, Defendants respectfully request that this Court set that Order aside or modify such Order to be reasonable in light of the facts of the case and controlling law, and for such other and further relief as this Court may grant.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been via CM/ECF on this 30th day of December, 2020 to Craig Rubinstein, Esq. of Katzman, Wasserman, Bennardini & Rubinstein, P.A. at smk@kwblaw.com, mrm@kwblaw.com and car@kwblaw.com.

**JENKINS LAW FIRM**
101 NE Third Avenue Suite 1500
Fort Lauderdale, FL 33301
Tel.  (954) 880-1199
Fax. (954) 880-1198
sjenkins@jenkinslawfirm.com

By: __/s/ John Spencer Jenkins_____
    **John Spencer Jenkins, Esq.**
    Florida Bar No. 100549